CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

JUL 22 2025

LAURA A. AUSTIN, CLERK
BY: K. Campbell
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 1:25cr35 |
| | : | |
| v. | : | Violations: |
| | : | |
| PAUL EUGENE WELBORN JR. | : | 18 U.S.C. § 1343 |
| | : | 18 U.S.C. § 1001 |

## INDICTMENT

### INTRODUCTION

1. On March 13, 2020, the President of the United States declared the ongoing COVID-19 pandemic to be an emergency under § 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. §§ 5121–5207) ("Stafford Act").

2. The Stafford Act authorizes the U.S. President to issue two types of declarations that enable federal assistance to states and localities in response to public-health incidents such as infectious-disease outbreaks. One type is an "emergency declaration" (authorized under Stafford Act § 501), and the other type is a "major disaster declaration" (authorized under Stafford Act § 401).

3. When the U.S. President declares an emergency, the Stafford Act permits disbursement from the federal "Disaster Relief Fund." With the presidential declaration in March of 2020, disaster-relief funds became available for release from the Small Business Administration ("SBA") and other agencies. This effort included the Economic Injury Disaster Loan ("EIDL") program administered by the SBA.

USAO No. 2022R00040                              1

**The EIDL Program and the CARES Act**

4. During the relevant time, the EIDL program provided low-interest loans to small businesses, renters, and homeowners in regions affected by disasters and emergencies. The SBA established an EIDL program specifically for the COVID-19 pandemic.

5. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law, enacted in March of 2020, that was designed to provide emergency financial assistance to people affected by the COVID-19 pandemic. The CARES Act authorized the SBA to provide EIDL loans of up to $2 million to eligible small businesses that were experiencing a loss of revenue from the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue "advances" of up to $10,000 to small businesses within three days of the business having applied for an EIDL loan. The amount of the advance was based on the number of employees the applicant claimed the business had. The advances did not have to be repaid, and an advance could be made before a loan was accepted or declined.

6. To obtain an EIDL loan or EIDL advance, an authorized representative of a qualifying business was required to submit an application to the SBA and provide certain information about the business. The information included the number of employees, gross revenues for the twelve-month period preceding the disaster, and the cost of goods sold in the twelve-month period preceding the disaster. In the case of EIDL loans meant for COVID-19 relief, the twelve-month period was the period preceding January 31, 2020. The applicant also was required to certify that the information in the application was true

and correct to the best of the applicant's knowledge. On the application, the applicant was warned that any false statement to the SBA or any misapplication of the loan proceeds could result in criminal penalties.

7. Applicants submitted EIDL applications directly to the SBA, via the internet. If the SBA approved the application, the amount of the loan was based, in material part, on the information the applicant provided about the business's employment, revenue, and cost of goods, as mentioned above. Any funds issued under an EIDL loan or EIDL advance were provided by the SBA and the U.S. Treasury.

8. EIDL funds could be used to replace lost revenue from the COVID-19 pandemic and pay for business obligations such as payroll, production costs, debts, rent, and mortgage payments. EIDL funds could *not* be used for personal expenses or business expenses unrelated to the loss of revenue from the COVID-19 pandemic. As stated in the loan agreement:

> USE OF LOAN PROCEEDS
> - Borrower will use all the proceeds of this Loan solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter and to pay Uniform Commercial Code (UCC) lien filing fees and a third-party UCC handling charge of $100 which will be deducted from the Loan amount stated above.

**Paul Welborn's Fraudulent EIDL Scheme**

9. Paul Eugene Welborn Jr. ("Welborn") founded Wings of Hope as a nonprofit organization in or around September of 2011.

10. On February 5, 2019, Welborn opened an account in the name of Wings of Hope at First Community Bank in Clintwood, Virginia. On February 25, 2020, Welborn

opened a personal bank account at the Abingdon, Virginia branch of First Community Bank.

11. On or around March 31, 2020, Welborn electronically transmitted to the SBA, via the internet, a fraudulent EIDL application on behalf of Wings of Hope. The application contained multiple material misrepresentations. These misrepresentations included:

   a. that, for the twelve months preceding January 31, 2020, Wings of Hope had $2,000,000 of gross revenue when in fact Wings of Hope had little or no revenue from business operations;

   b. that, for the twelve months preceding January 31, 2020, Wings of Hope had $2,000,000 in combined annual expenses, which included $330,000 in costs of goods sold, $410,000 in nonprofit costs of operations, and $260,000 in lost business rents, when in fact Wings of Hope's expenses were negligible;

   c. that Wings of Hope had twelve employees as of January 31, 2020, when in fact Wings of Hope had minimal operations and no employees as of that date.

12. The EIDL application advised Welborn about the consequences of making false statements. In addition, Welborn later signed a loan agreement, which again certified that all statements in the EIDL application were "true, correct, and complete," and advised Welborn of the consequences of misapplying loan proceeds.

13. On or about June 9, 2020, based on the fraudulent application, the SBA approved and then funded a total of $159,900 through a $10,000 "advance" and a $149,000 loan deposited into the Wings of Hope account at First Community Bank. The advance and loan disbursements were initiated by the SBA Denver Finance Center in Denver, CO, which transmitted the payment information through the "FMS" system to the U.S. Treasury. For the eight months preceding June 2020, there had been no activity at all in the Wings of Hope account, and the cash balance had been less than $1000 for nearly a year.

14. Welborn used the SBA funds for numerous personal expenses, including purchases at QVC, HSN, Amazon, Macy's, Best Buy, Omaha Steaks, and fast-food restaurants. In addition, through at least June of 2023, Welborn made a series of withdrawals of the SBA funds and transferred portions of the SBA funds between various bank accounts at First Community Bank and BB&T/Truist.

## COUNT ONE

The Grand Jury charges that:

1. On or about and between March 31, 2020, and April 30, 2021, in the Western District of Virginia and elsewhere, PAUL EUGENE WELBORN JR., having devised and intending to devise a scheme to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, and sounds for the purpose of executing such scheme.

2. It was part of the scheme that PAUL EUGENE WELBORN JR. submitted a fraudulent application to the SBA that contained materially false representations regarding Wings of Hope, which caused a wire transfer of $149,900 to be initiated by the SBA Denver Finance Center in Denver, Colorado, on or about June 9, 2020, to Wings of Hope's First Community Bank account ending in 246.

3. As a result of the fraudulent scheme, PAUL EUGENE WELBORN JR. received $159,900 in payments from the Small Business Administration to which he was not entitled.

4. The offense charged in this count occurred in relation to and involved a benefit authorized, transported, transmitted, transferred, disbursed, and paid in connection with a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act), and affected a financial institution.

5. All in violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The Grand Jury charges that:

1. On or about August 16, 2022, in the Western District of Virginia, PAUL EUGENE WELBORN JR. knowingly and willfully made any materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States.

2. Specifically, PAUL EUGENE WELBORN JR. falsely represented to an Internal Revenue Service – Criminal Investigation Special Agent that the

misrepresentations he made on the Wings of Hope EIDL application were either "a typo" or a mistake by the SBA.

3. All in violation of Title 18, United States Code, Section 1001(a)(2).

## NOTICE OF FORFEITURE

1. Upon conviction of one or more of the felony offenses alleged in this Indictment, the defendant shall forfeit to the United States:

> any property constituting, or derived from, any proceeds traceable to a violation of 18 U.S.C. § 1343, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c);

2. The property to be forfeited to the United States includes but is not limited to the following property:

### Money Judgment

Not less than $159,900 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate was obtained directly or indirectly as a result of said offense or is traceable to such property.

3. If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

> a. cannot be located upon the exercise of due diligence;
> b. has been transferred or sold to, or deposited with a third person;
> c. has been placed beyond the jurisdiction of the Court;
> d. has been substantially diminished in value; or
> e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property, pursuant to 21 U.S.C. § 853(p).

This 22 day of July, 2025.

USAO No. 2022R00040                                7

                                                                                              s/ Grand Jury Foreperson

*[signature: Whitney D. Price For]*

C. TODD GILBERT
United States Attorney

USAO No. 2022R00040                            8